UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE CARTER,

                Petitioner,

                                          Case No. 04-71762

v.

                                          HONORABLE JOHN CORBETT O'MEARA
                                          MAGISTRATE JUDGE  STEVEN D. PEPE

BLAINE LAFLER,

                Respondent.

_____/

**REPORT AND RECOMMENDATION**
ON
<u>**DWAYNE CARTER PETITION FOR WRIT OF HABEAS CORPUS (DKT. # 1)**</u>

      Petitioner Dwayne Carter was convicted of first degree premeditated murder, felon in possession of firearm, and felony firearm, in a jury trial in the Wayne County Circuit Court before the Hon. Patricia Fresard.  He was jointly tried with co-defendant David Hill, who had a separate jury.  A third co-defendant, Vinceson Riley, was not involved in this trial.  On January 26, 2001, Judge Fresard sentenced Petitioner to prison for life without parole, 2 to 5 years, and 2 years consecutive. Case No. 2000-6656.  Petitioner Dwayne Carter has now filed a timely habeas petition under 28 U.S.C. §2254 challenging his conviction and sentence.  This matter has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).  For the reasons indicated below, it is **RECOMMENDED** that this Petition be **DENIED**.

I.      <u>**BACKGROUND**</u>

      After the 2001 conviction, Petitioner filed his claim of appeal in the Michigan Court of Appeals.  On November 22, 2002, the Michigan Court of Appeals affirmed Petitioner's convictions.  *People v. Carter*, 2002 WL 31938932 (2002).  Petitioner's application for leave to appeal in the Michigan Supreme Court, was denied on May 30, 2003, for lack of merit.  *People v. Carter*, Michigan Supreme Court No. 122839.

Petitioner's habeas petition challenges his conviction on the same grounds raised in state court. His issues are:

A. There was Insufficient Evidence to Support the Verdict of First Degree Premeditated Murder.

B. Petitioner was Denied Due Process by the Trial Court's Refusal to Instruct on Self-Defense.

C. Petitioner was Denied Due Process by the Trial Court's Instruction Inferring Elements of the Crime.

D. Petitioner was Denied Due Process by the Prosecutor's Action in Arguing Different and Inconsistent Versions of the Facts to Petitioner's Jury and the Co-defendant's Jury.

E. Trial Counsel was Ineffective for Failing to Obtain the Services of a Firearms Expert where Petitioner Asserted that the Gun Discharged by Accident.


## II. THE FACTS LEADING TO THE CONVICTION

Petitioner sets forth the facts underlying his conviction as follows in a manner, which are largely undisputed by Respondent:

Christina Rezabek testified that on February 8, 2000, she lived near Chene and Palmer in Detroit. She heard hollering outside around 4 a.m. She saw a man on the ground being kicked by two others, with a third man holding back. She saw no weapons, and did not remember hearing a gunshot. She came down and told the men to leave the man alone. The three men left, and she went to help. (T II, 66-75).

She saw a female come to the man on the ground, crying. The man was unable to talk. She went inside and her son William Gargulinski came out, and fired his own gun.

Sherell Golden testified that the deceased, Godfrey Clark, was her boyfriend. Clark told her that he had sold a washing machine to Kim, the girlfriend of Petitioner Carter. He brought the machine over but she wasn't there. Golden later went with Clark to Chene and Palmer so she could visit Debbie to buy drugs. This was the next street over from Petitioner's house. While inside, she heard noises, and went outside. (T II, 88-95).

She saw Clark on the ground. David Hill, known as DC, held a baseball bat. Vinceson Riley was kicking Clark. Hill said to put the victim in the trunk of a car. Petitioner was hysterical, but did not interfere with the other men. Petitioner wanted to take Clark to the hospital, but Hill refused. She heard Clark say that Beau shot him, and Beau was Petitioner's nickname. Then people came out shooting, and the men left. She saw Riley and Hill kicking. She saw no hitting with the baseball bat. She never saw Petitioner with a weapon. (T II, 95-99, 121, 125).

2

Petitioner Carter came back and said that they had to get Clark to a hospital. The police came and Petitioner ran away. (T II, 101-102).

Golden told police that she thought that the shooting was over an argument about a washing machine. She also told police that Clark would sometimes carry a screwdriver with him. (T II, 107, 128).

Off. James Hillock testified to finding a .25 caliber shell casing. (T II, 137, 143).

Dr. Carl Schmidt testified that Clark died from a single gunshot wound to the left side of chest. It was not a close range, meaning it was fired from over 2 feet away. He had cocaine and morphine in his system; the morphine could have been from the hospital or from heroin use. The cocaine was used within a couple hours of death. Clark was not hit with a baseball bat. (TII, 147-154).

Off. Frazer Adams testified to the Hill jury about Hill's statement to police. Petitioner's jury was not present.

Off. Joseph Mecomber testified that on February 10, 2000 about 1:40 p.m. he got a call that DC (co-defendant Hill) was on Superior St. He saw a gun in Hill's hand. He chased him on foot, caught him in a vacant lot, and had to hit him in the head with his weapon to subdue Hill. He found a gun by a blue couch in an alley that Hill had run by. (T III, 53-61).

Susan LeValley testified that the bullet in Clark and the shell casing were fired from the gun found in the alley near Hill. It was a Larsen semi-automatic .25 pistol. (T III, 82-83, 91-93).

Off. Reginald Harvel testified that he interviewed Petitioner at the station on April 11, 2000. (T III, 110-114). In the course of an argument earlier in the day between Petitioner and the deceased, Godfrey Clark, Mr. Clark had fired shots at Petitioner, his girlfriend, and their home. Clark had insisted that Petitioner girlfriend had bought a washing machine from him and he wanted to be paid. Clark ordered Petitioner to "run his pockets" and took $140 from Petitioner. Petitioner admitted that he then sought out Mr. Clark to retrieve his money and "beat his ass." Petitioner twice told Off. Harvel that the gun went off by accident.

Petitioner also said:

> I told him to give me my money back. Godfrey had his hands in his jacket pocket. He told me he wasn't no whore, and he would finish what he started. I told DC [codefendant David Hill], look, he's still got a gun or something. DC gave me the gun at the same time Godfrey rushed me. I turned away and the gun fired. Godfrey fell to the ground saying he was shot. I didn't believe him.

The Michigan Court of Appeals brief summary of the facts underlying Petitioner's conviction parallels Petitioner's account:

The victim and defendant were not strangers encountering each other by chance. The evidence showed that the victim had been at defendant's house earlier that evening, the two were apparently involved in a disagreement about a washing machine, and the victim allegedly shot at defendant's house and robbed defendant. Defendant then obtained a baseball bat and a gun, and enlisted the assistance of two other men. They sought out the victim. Defendant admitted that he shot the victim, and that he went looking for the victim "to get [his] money back and to kick his ass."

*Carter*, 2002 WL 31938932 at *1.

## III.   LEGAL STANDARD FOR HABEAS REVIEW OF STATE CONVICTIONS:

### A.  Standard of Review Under the  Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") [1]

To be entitled to habeas relief, a petitioner must show that his conviction and/or sentence were imposed in violation of the federal constitution or other federal law.  In addition, a petitioner must establish actual prejudice from the error.  *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).  Federal courts must give complete deference to a state court's findings supported by the evidence.  *Sumner v. Mata*, 455 U.S. 591, 597 (1982).  Petitioner may rebut the presumption of correctness only with clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); *Smith v. Jago*, 888 F.2d 399, 407 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Further, trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas petition unless the error renders the trial so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment.  *Estelle v. McGuire*, 502 U.S. 62 (1991); *Waters v. Kassulke*, 916 F.2d 329, 335 (6th Cir. 1990); *Matlock v. Rose*, 731 F.2d 1236, 1242 (6th Cir. 1984), *cert. denied*, 470 U.S. 1050 (1985).  Even a trial court's abuse of discretion, without more, does not show a violation of the federal constitution and therefore does not warrant habeas relief.  *Sinistaj v. Burt*, 66 F.3d 804, 805 (6th Cir. 1995).

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104- 132, 110 Stat. 1214 (1996).

4

AEDPA modified 28 U.S.C. §2254(d) to require that where a claim has been adjudicated on the merits in state court proceedings, federal habeas relief shall not be granted unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court has explained how §2254(d)(1) is to be applied: "A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Id.* at 405-06.

A federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable...

[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law .... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11 (emphasis in original).

## B.    Procedural Bar - Exhaustion of State Court Remedies.

Before a state prisoner may challenge the constitutionality of his state court conviction by seeking habeas corpus relief pursuant to 28 U.S.C. §2254, the state prisoner must first exhaust

available state court remedies by presenting his claims to the state courts, to provide them with an opportunity to remedy any constitutional infirmities in his conviction. 28 U.S.C. §2254(b) and (c); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). A prisoner confined pursuant to a Michigan conviction must raise each habeas issue in the Michigan Court of Appeals and in the Michigan Supreme Court before seeking federal review of the conviction. *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Dombkowski v. Johnson*, 488 F.2d 68, 70 (6th Cir. 1978). Unless an exception applies, a petition must be dismissed for lack of exhaustion if it contains at least one issue which was not presented to the state courts, so long as a remedy is still available for the petitioner to pursue in the state courts. *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982); *Rockwell v. Yukins*, 217 F.3d 421, 424(6th Cir. 2000) (the AEDPA maintains the *Rose* requirement that a mixed petition must be dismissed).

On the other hand, the Supreme Court stated that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *See Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

This exception is contained in AEDPA, 28 U.S.C.A. § 2254(B)(2), which states that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

**IV.  ANALYSIS OF PETITIONER'S CLAIMS**

**A. There was Insufficient Evidence to Support the Verdict of First Degree Premeditated Murder.**

The Due Process Clause of the Fourteenth Amendment protects a criminal defendant from being convicted of a crime without proof beyond a reasonable doubt of every element of an offense. *In re Winship*, 397 U.S. 358, 364 (1970). In reviewing a conviction for sufficiency of the evidence, the evidence must be viewed in the light most favorable to the prosecution.

*Glasser v. United States*, 315 U.S. 60, 80 (1942), and the reviewing court must draw all reasonable inferences consistent with the verdict. *United States v. Orricco*, 599 F. 2d 113, 117 (6th Cir. 1979). In a federal habeas action, the standard of review is whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Generally speaking, federal habeas corpus is not the proper vehicle for state prisoners to seek review of issues of state law. *Thompson v. Bock*, 2007 WL 328688 (6th Cir. 2007). State courts, "are the final arbiters of the [state] law's meaning and application" and this Court is not the appropriate forum to adjudicate such issues. *Summers v. Leis,* 368 F.3d 881, 892 (6th Cir. 2004) (alteration added). Yet, "a habeas claim for sufficiency of the evidence does not request a federal court to review the correctness of state law, but instead, to review the evidence to insure that the due process guarantees of the Fourteenth Amendment have not been abridged by a state law conviction." *Thompson*, 2007 WL 328688 at *4. Thus, while the Supreme Court has instructed us to conduct our habeas review "with explicit reference to the substantive elements of the criminal offense as defined by the state law," our role is not to re-analyze the state court's interpretation of state law. *Jackson,* 443 U.S. at 324, n. 16. Rather, "our review in such cases is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor." *Thompson*, 2007 WL 328688 at *4. Moreover, relief is only available when the decision results in an objectively unreasonable application of federal law. *Taylor,* 529 U.S. at 409. In other words, we may only review the state court decision to determine whether there was an unreasonable application of federal law, not simply an incorrect application of federal law. *Id.*

"The standard for evaluating claims that a conviction is not supported by sufficient evidence presents a very difficult hurdle for the criminal appellant...." *United States v. Maxwell,* 160 F.3d 1071, 1077 (6th Cir.1998); *see also United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir.1986). *In Scott v. Perini,* the Sixth Circuit noted that "the standard is not whether the

evidence is sufficient to convince the habeas court of the petitioner's guilt beyond a reasonable

doubt. Nor does that standard require the prosecution to rule out every hypothesis except that of

guilt beyond a reasonable doubt." 662 F.2d 428, 431-432 (6th Cir.1981) (footnote omitted).

Further, all inferences and credibility determinations are drawn in favor of the prosecution.

*United States v. Adamo,* 742 F.2d 927, 932 (6th Cir.1984); *United States v. DeJohn,* 368 F.3d

533, 543 (6th Cir.2004). Finally, the Sixth Circuit has expressly held that a conviction may be

supported wholly by circumstantial evidence and still survive a sufficiency of the evidence

challenge. *York v. Tate,* 858 F.2d 322, 328 (6th Cir.1988).

     The Michigan Court of Appeals reviewed Petitioner's claim that there was insufficient

evidence to support his conviction of first-degree premeditated murder. In evaluating his claim,

the state court stated:

> In reviewing a challenge to the sufficiency of the evidence, we view the evidence in
> the light most favorable to the prosecution and determine whether a rational trier of
> fact could find that the essential elements of the crime were proven beyond a
> reasonable doubt. *People v. Johnson*, 460 Mich. 720, 723; 597 NW2d 73 (1999). To
> prove first-degree premeditated murder, the prosecution must establish that the
> defendant intentionally killed the victim and that the act of killing was premeditated
> and deliberate. *People v. Anderson*, 209 Mich.App 527, 537; 531 NW2d 780 (1995).
> Premeditation and deliberation require sufficient time to allow the defendant to take
> a "second look." *Id*. To premeditate is to think about beforehand; to deliberate is to
> measure and evaluate the major facets of a choice or problem. *People v. Plummer*,
> 229 Mich.App 293, 300; 581 NW2d 753 (1998). Premeditation and deliberation
> characterize a thought process undisturbed by hot blood. *Id*. The elements of
> premeditation and deliberation may be inferred from all the facts and circumstances
> surrounding the killing, but the inferences must have support in the record and
> cannot be arrived at by mere speculation. *Id*. at 301. Premeditation may be
> established through evidence of: (1) the prior relationship of the parties; (2) the
> defendant's actions before the killing; (3) the circumstances of the killing itself; and
> (4) the defendant's conduct after the killing. *Anderson*, supra at 537.

*Carter*, 2002 WL 31938932 at *1.

     Petitioner statement to the police indicates he was robbed by Godfrey Clark after the sale

of a washing machine went awry (T. III, p 110-114). Petitioner then went to a friend's residence

and borrowed a baseball bat and a gun. He and two friends went looking for Carter to get his

money back and to "kick his ass." After Petitioner located Clark, he shot him.

     Petitioner argues that his statement to police, admitted into evidence by the prosecutor,

showed a killing that was not premeditated. He claims his stated intent in seeking out Clark was to get his money back and beat him up, not to kill him. Further, Petitioner states that gun went off by accident, thereby demonstrating that the killing was not premeditated.

Petitioner also claims that the testimony of Sherell Golden is significant. Golden testified that she was Clark's girlfriend (T II, p. 89). She and Clark went to Chene and Palmer, a block from Petitioner's house. She went to Debbie's house to buy drugs, while Clark walked to the corner. Golden heard noise, then saw Clark lying on the ground (T II, p. 94-95).

Golden testified she saw co-defendant Hill with a baseball bat, and Hill and co-defendant Vinceson Riley kicking Clark. Hill said "Put that nigger in the trunk." Hill and Riley dragged him to the trunk of a car. Petitioner Carter was "just hysterical," but did not stop Hill and Riley. Petitioner was jumping up and down saying "let's take him to the hospital." She ran over and Clark said that Beau (a nickname for Petitioner Carter) shot him. Neighbors came outside and began shooting, and Carter, Hill and Riley left (T II, p. 95-99, p. 125-126). Golden further testified that Petitioner Carter came back alone, and told her, "Sherell, come on, we can't let him die; we got to get him to the hospital." Petitioner also told Clark he didn't mean to do it (T II, p. 101-102, p. 129).[2]

The Michigan Court of Appeals concluded that the evidence was sufficient for the jury to find premeditation and deliberation:

> While defendant asserted that he shot the victim by accident, the jury was not obliged to accept this explanation, and was free to conclude, based on the evidence, that defendant went after the victim in anger, and deliberately shot him in retaliation for his attack on defendant earlier that evening. A rational trier of fact could have found

---

[2] The record states:

Q: Yes. During the time that Beau was with you, after initially running away, coming back, did he say anything to you about I didn't mean it; it was an accident.

A: He told Godfrey – I was standing there when he told Godfrey. He said, man, I'm sorry, I didn't mean to do it, and Godfrey said: Why you do it, why you shot me, man, you like a brother to me.

(T II, p. 129).

that, when defendant asked for the baseball bat and gun, he wanted revenge, had thought about killing the victim to get that revenge, and when he went out looking for the victim with two weapons and two other men, defendant had decided to do just that.

*Carter*, 2002 WL 31938932 at *1.

Even if Petitioner after the shooting expressed remorse or concern about the consequences of his having shot Clark, that does not, as a matter of law, preclude a finding of sufficient facts prior to the shooting to uphold a premeditated murder finding. Also, viewing the evidence in the light most favorable to the prosecution, a jury could have concluded that Petitioner shot Clark in revenge with the intent to kill him and thereafter realized the risks of his apprehension and hoped Clark would live, or alternatively they jury may have simply discounted Sherell Golden's testimony as not reliable. Petitioner has failed to demonstrate that the legal findings of the Michigan Court of Appeals were an "unreasonable application of" Supreme Court precedent or that "the evidence was so overwhelmingly in favor of the petitioner." *See*, 28 U.S.C. § 2254(d)(1); *Thompson*, 2007 WL 328688 at *4. Moreover, Petitioner has not met his burden of showing a constitutional basis for this Court to modify the factual determinations of the state trial court or the legal determinations of the Michigan Court of Appeals. While Petitioner argues that his statements to police and witnesses demonstrate the shooting was not premeditated, the jury was not obligated to accept this explanation, and was permitted to infer, based on the evidence presented at trial, that Petitioner planned and deliberately sought revenge for the earlier attack by Clark.

Accordingly, Petitioner's sufficiency of the evidence claim fails.

**B. Petitioner was Denied Due Process by the Trial Court's Refusal to Instruct on Self-Defense.**

Petitioner argues that his constitutional right to a fair trial was violated when the trial court refused to instruct the jury on self-defense. Counsel inquired about the state court

providing a self-defense instruction to the jury, but it was initially denied.[3]  Petitioner claims that

Clark had earlier that day fired shots at Petitioner and his house, and robbed him at gunpoint.

Petitioner told police he intended to get his money back and beat Clark.  When Petitioner

confronted Clark, he stated "he wasn't no whore" and was going to finish what he started earlier,

and Petitioner saw him produce a shiny object.   Petitioner argues that the jury should have been

able to decide whether it was reasonable for Petitioner to fear for his life at that point, and an

instruction on self-defense should therefore have been given.

        The Supreme Court has interpreted the due process clause to require that criminal

defendants be afforded a meaningful opportunity to present a complete defense.  *See California

v. Trombetta*, 467 U.S. 479, 485 (1984).  In keeping with this principle, it has ruled that a

defendant is entitled to an affirmative defense instruction even though it may be inconsistent

with other portions of his requested jury instructions.  *In Stevenson v. United States*, 162 U.S.

313 (1896), the Court reversed a murder conviction arising out of a gunfight. The defendant had

requested that the trial court give both a manslaughter and a self-defense instruction.  Although

self-defense may be inconsistent with the charge of manslaughter, the Court recognized that a

full defense necessitated both instructions.  Similarly, in *Mathews v. United States*, 485 U.S. 58,

---

[3] The record indicates that defense counsel and the prosecution were proposing and
discussing a number of jury instructions, which they asked the state court to give them "an idea"
on whether they would be accepted (T. III, p. 150-154).  As to a possible self defense instruction,
the court stated:

> At this point I do not feel given the arguments of counsel that would be – let alone
> the evidence that there were three people there, and the situations of the defendants,
> and their statements, and their plan that self-defense would be appropriate.  However,
> again, counsel has not submitted either case law, or arguments, or anything else on
> the issue, so its very difficult.

From a review of the record, it does not appear then that a formal objection was raised.  The state
court invited the parties to meet and confer and stipulate to instructions where possible, and to
provide arguments and case law to the court in cases where agreement could not be
accomplished.  It is likely that the Michigan Court of Appeals indicated that "defendant failed to
preserve this issue by objecting to the exclusion of the self-defense instruction from the final
instructions" because no argument was presented and no formal objection was made. *Carter*,
2002 WL 31938932 at *2.

63-64 (1988), the Supreme Court held that even if a defendant denies one or more elements of the crime, he is entitled to an affirmative defense instruction whenever there is sufficient evidence from which a reasonable jury could find for him on this issue.

Yet, it is not improper for a trial court to require some "threshold" level of evidence for an affirmative defense instruction. *United States v. Bailey*, 444 U.S. 394, 413 (1980). As the Sixth Circuit explained in *Taylor v. Withrow*, 288 F.3d 846, 853 (6th Cir. 2002):

> the rule set out above does not give a defendant the right to offer any defense, nor to demand a jury be instructed on any theory. As set down in *Mathews*, the rule states that "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." 485 U.S. at 63-64, 108 S.Ct. 883 (emphasis added). Here, under Michigan law as interpreted by the state courts in this case, that condition was not met, and we are unable to find Michigan's evidentiary requirements on this subject to be unconstitutional.

*Taylor* 288 F.3d at 853.

The Michigan Court of Appeals reviewed Petitioner's claim only for plain error because "defendant failed to preserve this issue by objecting to the exclusion of the self-defense instruction from the final instructions." *Carter*, 2002 WL 31938932 at *2. Although defendant initially requested the instruction, the Court of Appeals found that counsel did not sufficiently "pursue the issue when given the opportunity to do so." *Id.* Under Michigan state law, Petitioner's claims regarding matters not properly objected to are procedurally barred, and are can only be reviewed for plain error.[4] The Court of Appeals evaluating Petitioner's claim for plain error found:

> In Michigan, the killing of another in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm. *People v. Heflin*, 434 Mich. 482, 502; 456 NW2d 10 (1990). A defendant is not entitled to use any more force than is necessary to defend himself. *People v. Kemp*, 202 Mich.App 318, 323; 508 NW2d 184 (1993).
>
> The evidence did not support an instruction on self-defense. Defendant based his

---

[4] To avoid forfeiture of review of this issue under the plain error rule, the defendant must demonstrate that: (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected the defendant's substantial rights. *People v. Carines,* 460 Mich. 750, 763-764, 597 N.W.2d 130 (1999).

request for the instruction on his statement to police. While defendant asserted in that statement that the victim had his hands in his pockets, and defendant thought he still had a "gun or something," defendant described the shooting as occurring accidentally when the victim rushed him. Thus, we find no error in the court's declining to give the self-defense instruction.

*Id*.

Because of the procedural default in failing to properly object, federal review of Petitioner's claim is also barred unless Petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). To demonstrate cause for procedural default, a habeas petitioner is required to show that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state's procedural rule. *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996). In Petitioner's reply, he argues that he did raise an objection at trial and the Michigan Court of Appeals failed to explain why a single objection was not sufficient (Dkt. #19).[5] Yet, even assuming *arguendo* that Petitioner's objection at trial was sufficient to not procedurally default his claim, it still fails on the merits.

Petitioner did not testify that the shooting was pure self-defense. Instead, he depicted it as a mix of accident and self-defense. On one hand, Petitioner claims that a self-defense instruction is warranted because as he stated to the police: Clark "had his hands in his jacket pocket. He told me he wasn't no whore, and he would finish what he started. I told DC [co-defendant David Hill], look, he's still got a gun or something. " Yet, on the other hand, Petitioner argues that the shooting that followed was unintentional, for the gun went off accidentally. As Plaintiff argues in his petition, he twice told Off. Harvel that the gun wet off by accident (T. III, p. 110-114). In other words, Petitioner claims that he did not intentionally shoot Clark to defend himself, only that the shooting stemmed from a defensive act, the pulling of the gun.

Under Michigan law, however, "[a] finding that a defendant acted in justifiable

[5] *See*, Footnote 4.

13

self-defense necessarily requires a finding that the defendant acted intentionally but that the circumstances justified his actions." *People v. Heflin*, 434 Mich. 482, 456 N.W.2d 10, 19 (Mich.1990). Michigan does not allow a defendant to claim justified self-defense as a defense to homicide unless the defendant claims the killing was intentional. *See, Id.* States have great latitude in criminal proceedings, including latitude to formulate both the elements of crimes and the defenses to them. *See Egelhoff*, 518 U.S. 37, 43 (1996). As the Sixth Circuit has stated:

> while a rule that prevented a defendant from claiming self-defense under any circumstances might violate due process, we cannot find that Michigan's formulation of the self-defense rule is unconstitutional. There is no precedent for such a conclusion, and it certainly does not violate clearly established Supreme Court rules or standards.

*Taylor*, 288 F.3d at 853.

In light of this holding, the trial court did not act unreasonably. The state trial court's determination that there was no evidence of justified self-defense, and its consequent refusal to instruct the jury on self-defense, did not involve either an unreasonable determination of the facts or an unreasonable application of clearly established federal law.

Petitioner may also claim that the trial court refused to instruct the jury on self-defense because this defense was inconsistent with accident. The trial judge's stated reason for refusing to instruct the jury on self-defense was that she believed that defense was not supported by the evidence, and the Michigan Court of Appeals reached the same conclusion. Even assuming, however, that the trial judge did refuse to instruct the jury on both accident and self-defense because she believed they were incompatible, that alone would not justify a grant of habeas. As the *Taylor* Court stated:

> Michigan law may well require a state court to let a defendant assert inconsistent defenses when supported by the evidence, *see People v. Mills*, 450 Mich. 61, 537 N.W.2d 909, 919-20 (Mich.1995), and on occasion even federal courts might be required to offer instructions on inconsistent defenses when the evidence supports both instructions, *see Mathews*, 485 U.S. at 65-66, 108 S.Ct. 883. Not all states, however, follow this rule, *see* Milton Roberts, Annotation, *Accused's right, in homicide case, to have jury instructed as to both unintentional shooting and self-defense*, 15 A.L.R.4th 983 (1982), and the right to present inconsistent defenses is not so widespread or well-established as to be a fundamental rule essential for due

process. See *Egelhoff*, 518 U.S. at 42-43, 116 S.Ct. 2013. **Whether the trial judge was right or not in his interpretation of Michigan law, his ruling did not so offend the fundamental principles of justice as to violate due process**.

*Taylor*, 288 F.3d at 854 (emphasis added).

Accordingly, Petitioner's claim that he was denied due process by the trial court's refusal to instruct on self-defense fails, and must be denied.

### C. Petitioner was Denied Due Process by the Trial Court's Instruction Inferring Elements of the Crime.

Petitioner argues that the state court erred when it instructed the jury that, pursuant to CJI2d 16.21, Defendant's state of mind could be inferred from the use of a deadly weapon. The instruction provides: "You may infer that the defendant intended to kill if he used a dangerous weapon in a way that was likely to cause death. Likewise, you may infer that the defendant intended the usual results that follow from the use of a dangerous weapon" (T. IV, p. 143).

In order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Hardaway v. Withrow*, 305 F.3d 558, 565 (6th Cir. 2002); *Buell v. Mitchell*, 274 F.3d 337, 355 (6th Cir. 2001). 28 U.S.C. §2254(a) allows habeas relief only for a violation of the "Constitution or laws or treaties of the United States." Errors in the application of state law are not to be questioned on habeas review and further, federal habeas courts have no authority to interfere in matters of state law. *Estelle v. McGuire*, supra (federal habeas corpus relief does not lie for errors of state law); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (federal court may not issue the writ on the basis of a perceived error of state law).

In evaluating this claim, the Michigan Court of Appeals stated:

The state of mind instruction given to the jury was almost a verbatim reading of CJI2d 16.21. The trial court instructed the jury that they "*may* infer that the defendant intended to kill if he used a dangerous weapon in a way that was likely to

cause death." (Emphasis added.) Defendant objects that the jury was not expressly told that it was not required to make the inference. However, the instruction by its terms did not require or direct the jury to find an intent to kill from defendant's use of a gun; rather, it simply instructed that it was permissible for the jury to infer intent based on the circumstances of the shooting. It is well established under Michigan law that a jury may infer intent to kill from any facts in evidence, including the use of a deadly weapon. *See People v. Dumas*, 454 Mich. 390, 403; 563 NW2d 31 (1997); *People v. DeLisle*, 202 Mich.App 658, 672; 509 NW2d 885 (1993); *People v. Turner*, 62 Mich.App 467, 470; 233 NW2d 617 (1975). Defendant's substantial rights were not prejudiced.

*Carter*, 2002 WL 31938932 at *2.

The Michigan Court of Appeals reviewed Petitioner's claim only for plain error because there was no objection at trial. Because of the procedural default in failing to object, federal review of these claims are also barred unless Petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). Petitioner makes no claim of cause for these procedural defaults. Petitioner's failure to establish cause thus bars federal habeas review of his claim without consideration of the issue of prejudice. *Coleman v. Thompson*, 501 U.S. 722 (1991). Nor does Petitioner attempt to show that this Court's refusal to hear his prosecutorial misconduct claims will result in a fundamental miscarriage of justice under *Murray v. Carrier*, 477 U.S. 478 (1986), which requires a showing that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298 (1995). That exception to procedural default requires a showing of actual innocence "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error. *Id.* at 316. There are no arguments or facts in this case supporting this high standard.

This ruling, which seems reasonable, does not render the Petitioner's entire trial fundamentally unfair and violates no federal law. Accordingly, Petitioner's claim that he was denied due process by the trial court's instruction inferring elements of the crime fails.

**D. Petitioner was Denied Due Process by the Prosecutor's Action in Arguing Different and Inconsistent Versions of the Facts to Petitioner's Jury and Co-defendant Hill's Jury.**

In order to be a federal constitutional due process violation warranting habeas relief, the prosecutorial misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Hamblin v. Mitchell*, 354 F.3d 482, 494 (6th Cir. 2003), *cert. denied*, 125 S. Ct. 344 (2004); *Frazier v. Huffman*, 343 F.3d 780, 791 (6th Cir.), *as amended on reh'g*, 348 F.3d 174 (2003), *cert. denied*, 541 U.S. 1095 (2004); *Hutchison v. Bell*, 303 F.3d 720, 750 (6th Cir. 2002); *Angel v. Overberg*, 682 F.2d 605, 608 (6th Cir. 1982) (en banc). In this regard, "'the touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor.'" *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)); *accord Smith v. Mitchell*, 348 F.3d 177, 210 (6th Cir. 2003), *cert. denied*, 125 S. Ct. 278 (2004); *Darden v. Wainwright*, 477 U.S. 168 (1986)(the prosecutor's statements must have been so egregious as to render the entire trial fundamentally unfair.)

Specifically, the Sixth Circuit takes into account "'the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof to establish the guilt of the accused.'" *Hamblin*, 354 F.3d at 494-95 (quoting *Angel*, 682 F.2d at 608); *accord Frazier*, 343 F.3d at 791; *Hutchison*, 303 F.3d at 750; *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000). "Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004), *cert. denied*, 125 S. Ct. 1645 (2005). Even before AEDPA, the Supreme Court concluded that review of state court convictions in federal courts on habeas corpus is narrowly based on the constitutional guarantee of due process and not the broad exercise of supervisory power by the federal appeals court with regard to its own trial court. *DeChristoforo*, 416 U.S. at 642. Again, after AEDPA, the inquiry in federal habeas review is directed to deciding whether the state

court's determination of the issue was an unreasonable application of clearly established federal law. *Frazier v. Huffman*, 343 F.3d at 793.

Petitioner argues that the prosecutor, in arguing to co-defendant Hill's jury, gave a version of facts that was best suited towards convicting Hill (that there was a shooting followed by a beating) (T. IV, p. 17-18). Then she gave a different version of facts to Petitioner Carter's jury (that the victim was beaten helpless to the ground when shot) (T. IV, p. 126-129), to make viable her claim of premeditation and deliberation. Petitioner claims that the prosecutor thus knowingly and intentionally gave argument she knew or believed to be false.

The Michigan Court of Appeals considered Petitioner's claim with regard to the prosecutor's alleged prejudicial comments. Because Petitioner failed to timely and specifically object to the prosecutor's conduct, the Michigan court reviewed the remarks only for plain error. Finding none, it declined to provide relief. Specifically, the Court of Appeals stated:

> Here, defendant challenges statements the prosecutor made during her rebuttal closing argument relating to the sequence of the shooting and beating of the victim. Our review of these statements, in the context in which they were made, reveals that the statements were made in response to defense counsel's argument that the shooting did not occur after the beating. The record indicates that, although the prosecutor does suggest on rebuttal that the shooting followed the beating, there is no indication that she was arguing as "fact" something she believed to be untrue or that she argued it as a fundamental part of her case against defendant. Rather, the prosecutor, in response to defense counsel's argument that there was no shooting after the beating, essentially argued that the sequence of the beating and shooting was irrelevant to the determination whether defendant committed the offense charged and that, under either theory, there was evidence of defendant's intent to kill the victim. In addition, the trial court instructed the jury that the statements and arguments of the lawyers were not evidence and could not be considered in discussing and deciding the case.

*Carter*, 2002 WL 31938932 at *2.

As previously noted, because of the procedural default in failing to object, federal review of these claims are barred unless Petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Ylst v. Nunnemaker*, 501 U.S. 797 (1991). Petitioner makes no claim of cause for these procedural defaults. Petitioner's

failure to establish cause thus bars federal habeas review of his claim without consideration of the issue of prejudice. *Coleman v. Thompson,* 501 U.S. 722 (1991). Nor does Petitioner attempt to show that this Court's refusal to hear his prosecutorial misconduct claims will result in a fundamental miscarriage of justice under *Murray v. Carrier,* 477 U.S. 478 (1986), which requires a showing that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298 (1995). That exception to procedural default requires a showing of actual innocence "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error. *Id*. at 316. There are no arguments or facts in this case supporting this high standard.

On this record it cannot be said that the Michigan Court of Appeals made an unreasonable application of clearly established federal law on the challenges to prosecutorial misconduct. Accordingly, Petitioner's claim of prosecutorial misconduct should be rejected.

### E. Trial Counsel was Ineffective for Failing to Obtain the Services of a Firearms Expert where Petitioner Asserted that the Gun Discharged by Accident.

Petitioner asserts that his trial counsel provided ineffective assistance because she failed to obtain a firearms expert to testify regarding how he might have accidentally discharged the gun. Petitioner argues that where the defense was accident, the government firearms expert of course did no testing to try to support that claim, because a showing that the gun could go off by accident could not possibly help advance the prosecution goal of convicting Petitioner. He claims defense counsel should have arranged for a private expert to test the firearm to support Petitioner's defense, and the failure to do so was prejudicial.

To show that he was denied the effective assistance of counsel under federal constitutional standards, Petitioner must demonstrate that, considering all the circumstances, counsel's performance fell below the objective standard of reasonableness and so prejudiced defendant that he was denied a fair trial and a reasonable probability exists that, but for counsel's

conduct, the result would have been different.  *Strickland v. Washington*, 466 U.S. 668, 693

(1984).  "If a reviewing court can determine lack of prejudice, it need not determine whether, in

fact, counsel's performance was deficient." *United States v. Boyd*,  259 F. Supp. 2d 699, 705

(W.D. Tenn. 2003) (citing *Strickland*, 466 U.S. at 697).  Federal court review presumes that an

attorney is competent and the burden rests upon the defendant to show a constitutional violation.

*United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995).  Moreover, a strong presumption exists

that counsel's behavior lies within the wide range of reasonable professional assistance.  *O'Hara*

*v. Wigginton*, 24 F.3d 823, 827 (6th Cir. 1994).

In evaluating Petitioner's claim of ineffective counsel, the Michigan Court of Appeals

found:

> Because defendant did not move below for a new trial or a *Ginther* hearing, this
> Court's review is limited to mistakes apparent on the record. *People v. Milstead*, 250
> Mich.App 391, 399; 648 NW2d 648 (2002). We find no ineffective assistance.
> Although counsel did not secure a firearms expert as a defense witness, she inquired
> of the prosecution's witness regarding the weapon that was recovered. She elicited
> testimony that the gun, which was a semi-automatic, would fire easily. Thus, we are
> unable to conclude that counsel's failure to secure a defense firearms expert had any
> impact on the outcome of the trial.

*Carter*, 2002 WL 31938932 at *2.

Petitioner's claim fails to pass the two-prong test of *Strickland.*  He has shown neither (1)

that his counsel's performance fell below an objective standard of reasonableness or that (2) but

for counsel's error, there is a reasonable probability that the result of the trial would have been

different.  Petitioner has not put forth any evidence that a firearms expert would have supported

his theory that the gun "was likely to go off by accident" (Dkt. #1, p. 34).  In order to show that

the gun was likely to go off by accident, it would have been necessary to show some sort of

defect in its manufacturing.  Yet, to the contrary, the prosecution's expert testified that the gun

appeared fully functional, and functioned as it was designed to by the manufacturer (T. III, p.

92).  As there is no suggestion in the record that the gun Petitioner used was not operating

properly, Petitioner's claim is highly speculative.

Petitioner's trial counsel did elicit testimony from the prosecution's expert that the semi-

automatic he used would fire more easily than a revolver (T. III, p. 91-92). There was therefore limited strategic value in hiring an expert, who in all likelihood, would only have agreed with that same conclusion. Petitioner argues that the prosecution somehow rehabilitated the witness by soliciting testimony that "she did not know whether this particular gun would fire with greater ease or difficulty than other guns" (Dkt. 1, p. 34). It is extremely tenuous, however, to argue that this rebuttal would qualify as a rehabilitation that completely undermined the expert's previous statement. Ultimately, trial counsel's decision to not call her own witness was strategic and is thus "virtually unchallengeable." *Strickland* 466 U.S. at 690. Regardless, trial counsel's decision was not objectively unreasonable and therefore fails to satisfy the first prong of *Strickland*.

Petitioner has also failed to satisfy the second prong of *Strickland* that but for counsel's error, there is a reasonable probability that the result of the trial would have been different. Although counsel did not secure a firearms expert as a defense witness, she elicited testimony from the prosecution's witness that the gun, which was a semi-automatic, would fire easily. This evidence combined with Petitioner's other arguments at trial made the jury well aware of Petitioner's theory that the shooting was an accident. That they chose to reject that theory and convict Petitioner, does not warrant habeas relief. Accordingly, Petitioner's claim of ineffective assistance of trial counsel fails, and it is recommended that Petitioner's habeas petition be denied.

In connection with Petitioner's claim of ineffective assistance of counsel, Petitioner has requested that the Court conduct an evidentiary hearing. The undersigned finds that an evidentiary hearing is not required because the issue can be resolved by reference to the state court record. *See, Harris v. Konteh*, 198 Fed. Appx. 448, 455 (6th Cir. 2006), finding "while concerns for fairness might seem to advise in favor of granting an evidentiary hearing, we cannot ignore the language of § 2254(e)(2) and 'Congress' intent to avoid unneeded evidentiary hearings in federal habeas corpus.' *Williams v. Taylor*, 529 U.S. 420, 436, 120 S.Ct. 1479, 146 L.Ed.2d

435 (2000)." *See also, Spreitzer v. Peters*, 114 F.3d 1435, 1455-56 (7th Cir. 1997) ("An evidentiary hearing is not necessary when the facts essential to the consideration of the constitutional issue are already before the court.").  Accordingly, it is recommended that Petitioner's request for an evidentiary hearing be denied.

**V.    CONCLUSION AND RECOMMENDATION**

On this record it cannot be said (1) that the Michigan Court of Appeals made an unreasonable application of clearly established federal law on any of Petitioner' challenges where it addressed the federal question, nor (2) that there were any federal constitutional violations on those issues the Michigan Court of Appeals did not address under federal law.

Accordingly, for the above stated reasons, **IT IS RECOMMENDED** that Petitioner's request for a hearing and his habeas corpus request be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Filing of objections, which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: June 7, 2007                          s/Steven D. Pepe
Ann Arbor, Michigan                          United States Magistrate Judge


## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2007, I electronically filed the foregoing paper with the Clerk  Court using the ECF system which will send electronic notification to the following: William C. Campbell, James S. Lawrence,  and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants : not applicable.

s/ James P. Peltier
James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church St.
Flint, MI 48502
810-341-7850
pete_peliter@mied.uscourts.gov